UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

William L.,

Petitioner,

v.

Joel Brott, et al.,

Respondents.

**EMERGENCY** ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS
Civil File No. 26-04609 (MJD/DLM)

---

Hassan M. Ahmad, The HMA Law Firm PLLC, Sterling, VA, Stephanie Morales, Attorney at Law, Minneapolis, MN, Counsel for Petitioner.

David W. Fuller, Carl Berry, Assistant United States Attorneys, Counsel for Federal Respondents.

---

This matter is before the Court on Petitioner William L.'s Petition for Writ of Habeas Corpus ("Pet."). Petitioner claims he is being detained in violation of the Fourth and Fifth Amendments of the Constitution and the Accardi Doctrine, among other reasons. (Docs. 1, 22-2.)

Because the Court finds that Petitioner's arrest and detention violate the Constitution, the Court orders Petitioner's immediate release.

# I. FACTS[1]

## A. Background Facts

Petitioner is a thirty-two-year-old dentist from Mississauga, Ontario. (Pet. ¶ 1.) In 2019, Petitioner came to Minnesota on an F-1 student visa to study at the University of Minnesota School of Dentistry. (Id. ¶¶ 1, 19.) He graduated in 2023, the same year he married his dental school classmate who is a United States citizen. (Id. ¶ 20.) Their daughter was born in April 2025. (Id.)

Petitioner and his family moved several times during the relevant time period. As detailed in the Petition and supported by exhibits, every time Petitioner and his family moved, Petitioner filed changes of address with the post office and with USCIS. In turn, USCIS communicated with Petitioner at each new address. (Exs. A, B.)

---

[1] Undisputed facts from the Petition are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

On September 27, 2023, Petitioner's wife (variously, "Lauren" or "Lauren L.") filed a Form I-130, Petition for Alien Relative. (Id. ¶ 21.) Petitioner concurrently filed a Form I-485, Application to Register Permanent Residence or Adjust Status and other documents. (Id.; Exs. F; J.)

On January 9, 2025, Lauren's I-30 application for Petitioner was approved. (Ex. J.) Petitioner practiced dentistry in federally-designated "shortage areas" until his work authorization was revoked. (Pet. ¶ 34.) He now volunteers as a dentist at a low-cost clinic in Burnsville, MN. (Id.) Petitioner has never been arrested in the U.S. and has appeared at every scheduled USCIS appointment, including the one where he was arrested and taken into detention. (Id.)

USCIS, however, on March 7, 2025, USCIS informed Petitioner that his Form I-485 Application to Register Permanent Residence or Adjust Status "did not sufficiently establish [his] eligibility at the time of filing." (Doc. 12-2 at 2.) Accordingly, USCIS denied Petitioner's Form I-485 Application and requested more evidence, which Petitioner provided. (Ex. H.)

On January 15, 2026, USCIS denied Petitioner's I-485 Application for "want of a certified Ontario court record concerning a 2012 charge that the Crown had withdrawn after diversion." (Pet. ¶ 24.) The denial was mailed to the address in Hedgeville, West Virginia where Petitioner then lived. (Ex. F.) The denial stated that USCIS 'may issue you a Notice to Appear' if Petitioner did not depart within 33 days." (Pet. ¶ 24 (quoting Ex. F at 3).)

On February 5, 2026, through counsel, Petitioner filed a Form I-290B, Notice of Appeal or Motion listing his address as Hedgesville. (Ex. G at 1.) Petitioner received a confirmation of receipt. (Id. at 2.) This Appeal remains pending.

On February 24, 2026 – "forty days after the denial was mailed to Hedgesville, and nineteen days after the I-290B listing Hedgesville was filed – DHS issued a Notice to Appear" charging Petitioner as being inadmissible for failing to comply with documentation requirements and setting a hearing date in Virginia Immigration Court for March 26, 2026. (Pet. ¶ 26; Doc. 12-3.) Because Petitioner did not appear on March 26, he was ordered removed in absentia.

In the five weeks preceding issuance of the NTA, USCIC had mailed Petitioner a decision at Hedgesville and received a motion from him, via his counsel, stating that he lived in Hedgesville, WV. (Pet. ¶ 27.)

Petitioner first learned about the NTA, the hearing, and his removal order when he appeared with counsel at an October 23, 2026 immigration interview in St. Paul, MN. Petitioner was arrested by two ICE agents at the end of the interview on a Form I-205 Warrant of Removal signed by David Easterwood. (Exs. A ¶ 5; B ¶ 4; C ¶ 3; D-2.) Petitioner was transported to the Sherburne County Jail where he remains in ICE custody.

On October 25, 2026, Petitioner filed a motion to rescind the in absentia order and reopen proceedings with the Sterling Immigration Court on the ground that he did not receive notice. (Ex. 1-2.)

**B. The Instant Petition**

Also on October 25, 2026, Petitioner filed the instant writ of habeas corpus with this Court and a motion for a TRO. Late that night, the Court granted the TRO and issued an OSC. Respondents are prohibited from removing Petitioner from the Court's jurisdiction until resolution of the

habeas corpus petition. Respondents responded on October 28 and Petitioner replied on October 30.

On October 28, 2026, Petitioner's motion to reopen was granted by the immigration court because Petitioner provided sufficient evidence of lack of notice. (Doc. 14-2.) Therefore, Petitioner argued that his detention is no longer supported because it rests on a faulty notice that USCIS documents and that the Immigration Court admits. He requested that the Court order his immediate release and order that Respondents may not re-detain him or remove him without first obtaining leave of the Court.

**C. Respondents' Motion to Dismiss as Moot**

Late Friday, October 30, 2026, Respondents filed a motion to dismiss this case as moot. (Doc. 15.) They argue that there is no longer a live case or controversy here because Petitioner was originally detained under 8 U.S.C. § 1231 as a person subject to a final order of removal and now that the immigration court has re-opened proceedings, Petitioner is no longer detained under § 1231.

Respondents state that Petitioner is now detained under 8 U.S.C. § 1225(b)(2). They therefore asked the Court to dismiss the petition for mootness. In the alternative, they asked the Court to order Petitioner to file an amended petition limited to arguments based on his current § 1225(b)(2)(A) detention issues.

The Court ordered Petitioner to respond to this motion and Petitioner responded this morning, November 1, 2026.

## II. DISCUSSION

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

It is well established that certain constitutional protections available to persons inside the United States are unavailable to noncitizens outside of our geographic borders. But once a noncitizen enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within

the United States, including noncitizens, whether their presence here is "lawful, unlawful, temporary, or permanent." Id. at 693 (citations omitted). Petitioner must prove unlawful detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**B. The Equities of this Case Require Petitioner's Immediate Release**

Respondents now admit that the reason Petitioner was arrested and detained no longer applies. However, they still insist he must be detained without the opportunity for release under § 1225(b)(2). The hubris of admitting that USCIS made a big mistake, but not even offering any sort of relief is galling, although not surprising. There is no combination of facts or legal argument that can support this position.

Because the facts presented here are so appalling and so well supported, the Court could issue a long order, complete with colorful details about, and commentary on, the abuses suffered by Petitioner. However, because the Court is determined that Petitioner will not spend another night in the Sherburne County Jail, the following order cuts to the legal necessities.

**C. The Fourth Amendment Requires Petitioner's Immediate Release**

Petitioner was originally detained based on an I-205 Order of Final Removal. That order has now been vacated and no new warrant or other custody determination requires Petitioner's detention. Therefore, Petitioner's arrest and detention has no lawful predicate. The arrest was "functionally warrantless." Jose V.P.R. v. Sheriff of Freeborn Cnty, No. 26-CV-3047 (NEB/DLM), 2026 WL 2546265, at *2 (D. Minn. Aug. 28, 2026).

ICE has "limited authority" to make warrantless arrests and must act pursuant to 8 U.S.C. § 1357(a)(2). Arizona v. United States, 567 U.S. 387, 408 (2012). Section 1357(a)(2) permits immigration officials to arrest a noncitizen without a warrant only where the officer has "reason to believe" that (1) "the alien . . . is in the United States in violation of any such law or regulation," and (2) "is likely to escape before a warrant can be obtained for his arrest."

Section 1357 implicates the Fourth Amendment's protections. The Fourth Amendment protects all individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. An arrest qualifies as a "seizure" and therefore must be supported by probable cause. United States v. Miller, 974 F.2d 953, 956 (8th Cir. 1992). Fourth Amendment protections apply to seizures of noncitizens. United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010). Because § 1357(a)(2)

implicates seizures of noncitizens, "reason to believe" in the statute means "constitutionally required probable cause." Id. To determine whether there is probable cause, a court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Probable cause exists when, based on the totality of the circumstances, facts are "sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." Garang v. City of Ames, 2 F.4th 1115, 1121 (8th Cir. 2021) (cleaned up).

The burden is on Respondents to prove both elements of a valid warrantless arrest. The failure to prove both elements requires that the petitioner be released. Cutberto R.P. v. Blanche, No. CV 26-01934 (MJD/DTS), 2026 WL 3040320, at *5 (D. Minn. Apr. 10, 2026) (holding that release was proper remedy when Respondents did not act within their constitutional authority in effectuating petitioner's arrest); Jefferson G.H.L. v. Blanche, Civil No. 26-2344 (JRT/ECW), 2026 WL 1229623, at *3 (D. Minn. May 5, 2026) (citing Ruben D.A.G. v. Blanche, No. 26-CV-02041 (MJD/DJF), Docket No. 9, slip op., at 8 (D. Minn.

April 20, 2026)) ("Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen.")); Francisco M.A. v. Blanche, Civil No. 26-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026) ("To hold that a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one.").

Here, USCIS had no probable cause to believe Petitioner was in the country illegally. The totality of the circumstances—USCIS's own files and communications with Petitioner—proved that he no longer lived at the address to which the NAT and order for removal was sent.

ICE agents on scene had the "burden to make a 'particularized assessment' into whether the noncitizen is likely to evade detention," meaning that he could not be located at another identifiable location after a warrant was obtained. Jorge Anibal P.P., 2026 WL 2017765, at *4 (quoting Orellana v. Nobles Cnty., 230 F. Supp. 3d 934, 946 (D. Minn. 2017)); Walther Ademir A. S. v. Blanche, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (citing Escobar Molina v. DHS, 832 F. Supp. 3d 22, 39 (D.D.C. 2026)).

ICE agents had no reason to believe Petitioner was a flight risk. He has appeared for every hearing for which he received notice and has never been involved with American law enforcement. He also kept USCIS apprised of address changes, which, of course, is the whole reason we are where we are. He has a family; deep ties to the community, as shown, in part, by his selfless provision of free dental services to Minnesota residents; and a community of supporters, including many Americans, as demonstrated by over a dozen letters of support in the record. It strains credulity to think that such a petitioner would flee.

Therefore, "[b]ecause Respondents have not shown that Petitioner was likely to escape, they failed to comply with 8 U.S.C. § 1357 . . . Respondents, therefore, improperly arrested and detained Petitioner." Hector J.A.S. v. Shea, No. CV 26-2242 (JRT/DLM), 2026 WL 1243500, at *3 (D. Minn. May 6, 2026).

**D. The Fifth Amendment Requires Petitioner's Immediate Release**

Even if Petitioner is detained pursuant to § 1225(b)(2), he is still entitled to due process of law under the Fifth Amendment, which provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The United States Supreme Court has

declared that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

All three factors weigh in Petitioner's favor. USCIS paroled him back into the U.S. from Canada to finish his application process. (Pet. ¶ 22.) "Once a noncitizen has been provided a pathway for release and entry into the United States subject to whatever terms are imposed, the release may create a cognizable liberty interest protected by the Fifth Amendment." Orlando R.V.V. v. Blanche, No. 26-cv-1903 (MJD/SGE), Docket 11, slip op., at 11 (D. Minn. Apr. 28, 2026) (quotation omitted). Here, Petitioner has an even higher liberty interest than most immigration petitioners because he came into the country legally and has

followed the letter of the law on every step of his immigration process. It is only but for USCIS's own error that he was ever in custody.

The risk of erroneous deprivation of a liberty interest is obvious here. USCIS has already erroneously deprived Petitioner of his liberty. Finally, there are no facts supporting that Petitioner is a flight risk. Petitioner's prior release "in and of itself reflects a determination that the individual is neither a flight risk nor a danger to the community." Id. at 15-16 (citation omitted). The Court now makes the same determination. Petitioner is not a flight risk.

Any interest USCIS may have here pales in comparison to Petitioner's interests. Moreover, it is a waste of financial and administrative resources to keep a person in custody who is not legally detained.

Because Petitioner's arrest and detention violate the Fourth and Fifth Amendments, his release is the appropriate remedy. See, e.g., Ahmed M. v. Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026).

## III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED as follows:**

1. Respondents are ordered to arrange for the **immediate** release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least one (1) hour in advance to Petitioner's counsel, but in no instance shall Petitioner remain detained after **6:00 p.m. Central Standard time today, November 1, 2026**;

2. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest;

3. Petitioner shall be released on his own recognizance;

4. Respondents, and all persons acting in concert with them, shall not re-detain, transfer, or remove Petitioner from the United States, **on any theory**, without first filing a motion for leave in this Court, served on Petitioner's counsel, identifying the statutory authority invoked, the custody determination made and by whom, and any materially changed circumstances. No re-detention shall occur before the Court rules on such a motion. Respondents shall bear the burden on any such motion of establishing by clear and convincing evidence that no condition or combination of conditions will reasonably assure Petitioner's appearance and the safety of the community;

5. Respondents are ordered to confirm with the Court Petitioner's release from custody within twenty four (24) hours from the date of this Order;

6. Respondents' Motion to Dismiss **[Doc. 15]** is denied with prejudice;

7. The Court retains jurisdiction over this matter to enforce this Order; and

8. Any motion for attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed within thirty (30) days of entry of judgment.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 1, 2026

s/ Michael J. Davis
Michael J. Davis
United States District Court